**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KRISTINA DAWN STRATTON, | ) | CASE NO. 3:24-CV-01972-JJH |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Kristina Dawn Stratton ("Stratton" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On April 19, 2012, Stratton filed an initial application for DIB, alleging a disability onset date of March 1, 2011, and claiming she was disabled due to blindness, shortness of breath, pulmonary edema, volume overload, bi-polar disorder, and depression. (ECF No. 8 at 139, PageID #: 166, Ex. 1A at 1). In September of 2012, the claim was awarded. (*Id.* at 12, PageID #: 150). On August 29, 2016, the administrator performed a continuing disability review ("CDR") and determined that Stratton's eyesight had improved, and as such she was no longer considered disabled per the definition of the Social Security Act. (ECF No. 8 at 172, PageID #:199, Ex. 3A at

1

1). A disability hearing officer affirmed the determination upon reconsideration, and Stratton requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8 at 176, PageID #:203, Exs. 7A, 10B, 11B, 12B). In December of 2018, ALJ Patricia Carey held a hearing and issued an unfavorable opinion in March of 2019. (ECF No. 8 at 91 PageID #:118) (ECF No. 8 at 177 PageID #:204, Ex. 8A at 1). The Appeals Council ("AC") vacated the decision after finding that this hearing had been held over teleconference, despite Stratton's timely objection. (ECF No. 8 at 206 PageID #:233, Ex. 9A at 3-4). The AC remanded Stratton's case back to the ALJ for an in-person hearing with additional evidence to complete the administrative record in accordance with the regulatory standards of 20 CFR 404.1512. (*Id.*). On June 27, 2021, ALJ Carey held another hearing and issued an unfavorable opinion on July 15, 2021. (ECF No. 8 at 25, PageID #:52). Stratton submitted a request for review to the Appeals Council, which was denied in September of 2022. (ECF No. 8 at 10, PageID #:37).

Stratton subsequently filed suit in the U.S. District Court for the Northern District of Ohio, and Stratton and the Acting Commissioner of Social Security jointly stipulated that the matter be remanded back to the Commissioner for further administrative proceedings. (ECF No. 8 at 2792, PageID #:2818). The court remanded the claim to an ALJ for further consideration of Stratton's claims, development of the record, and issuance of a new decision. (ECF No. 8 at 10, PageID #:37). ALJ Joyce Frost-Wolf held hearings on April 23, 2024 and August 22, 2024, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8 at 2719, PageID #:2746); (ECF No. 8 at 2688, PageID #:2715). On September 10, 2024, the ALJ issued a written decision finding Stratton was not disabled. (ECF No. 8, PageID #:2683).

On November 12, 2024, Stratton filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Claimant asserts the following assignment of error:

> The ALJ's RFC determination was not supported by substantial evidence where she failed to properly weigh the consultative opinion produced by Jeffrey Unterbrink, OD, and therefore the ALJ failed to show that medical improvement had occurred.

(ECF No. 10 at 1).

## III. Background

The ALJ found that since August 1, 2016, Stratton has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). (ECF. No. 8 at 2662, PageID #: 2689). Prior to 2016, Stratton was initially found disabled due to kidney failure and vision impairment.

### A. Relevant Hearing Testimony

In May of 2016, Stratton testified that she was unable to read stop signs, could not watch her grandchildren, and could not go on family trips. (ECF No. 8 at 2668, PageID #: 2695). In September of 2016, Stratton reported that she cannot see at all some days, depending on lighting and location. She reported that she cannot sit or stand for any period of time, that she cannot perform most everyday tasks without assistance, and that she suffers from chronic pain. (ECF No. 8 at 2668, PageID #: 2695).

In the hearing held before the ALJ on April 23, 2024, Stratton testified that she rarely stands or walks because of gastrointestinal issues and dizziness. (ECF No. 8 at 2729-2733, PageID #:2756-2760, TR 9-13). She reported that she needed assistance to bathe, cook, and dress herself, and that she experienced pain from sitting, standing, and walking. (*Id.*). She stated that her vision

3

worsened significantly in darkly lit settings. (*Id.*). In the final hearing on August 22, 2024, Stratton further testified that after having a stroke in May of 2024, she had experienced double vision and dizziness, with further difficulty engaging in everyday tasks. (ECF No. 8 at 2703-2704, PageID #:2730-2731, TR 14-15).

### B. Relevant Medical Evidence

On March 18, 2011, Mandar M. Joshi, M.D., of Retina Vitreous Association, recorded Stratton's vision as 20/400 in the right eye and 20/200 in the left eye, with eccentric fixation, which indicates that a portion of nervous tissue (fovea) was permanently lost. (ECF No. 8 at 144, PageID #: 171, Ex. 1A at 6). On January 6, 2012, Dr. Joshi found that her vision was in the 20/400 range in both eyes. (*Id.*). Stratton reported that glasses didn't help. (*Id.*). Her visual impairment was found to meet Listing 2.02. (*Id.*).

On May 13, 2012, Stratton was hospitalized for end stage renal disease. (ECF No. 8 at 145, PageID #: 172, Ex. 1A at 7). The disability hearing officer found Stratton met Listing 6.02A and qualified as disabled beginning on the date of this hospitalization. (ECF No. 8 at 150, PageID #: 177, Ex. 1A at 12). The officer found Stratton disabled primarily due to chronic renal failure, with loss of visual acuity as a secondary priority in the determination. (ECF No. 8 at 146, PageID #: 173, Ex. 1A at 8).

On May 3, 2013, Stratton received a kidney transplant at the University of Cincinnati. The donor kidney functioned well, and Stratton no longer needed dialysis, but she reported some chronic pain as a result. (ECF No. 8 at 158, PageID #: 185, Ex. 2A at 7). At a postoperative follow-up in June of 2013, a renal transplant ultrasound revealed some fluid collection, but otherwise the results were unremarkable. (ECF No. 8 at 2180, PageID #: 2207, Ex. 32F at 13). On August 29, 2016, the Disability Adjudicator found that the severity of Stratton's renal condition no longer met

6.02A. (ECF No. 8 at 160, PageID #: 187, Ex. 2A at 9).

On August 17, 2016, Dr. Jeffrey Unterbrink, listed as a non-treating source, evaluated Stratton's eyesight. (ECF No. 8 at 153, PageID #: 180, Ex. 2A at 2). Her vision was 20/40 -2 in her left eye, both without glasses and with best correction. (ECF No. 8 at 1706, PageID #: 1733, Ex. 19F at 2). At 16 inches, her left eye vision was 20/80 without glasses and 20/50 with best correction. (*Id.*). The vision of her right eye was limited to counting fingers. (*Id.*). The disability adjudicator found that because Stratton's left eye vision had improved from 20/200 to 20/40, she no longer met Listing 2.02 and was not disabled. (ECF No. 8 at 161, PageID #: 188, Ex. 2A at 10). Dr. Unterbrink performed a second consultative examination in August of 2017 with similar findings, including right eye acuity of counting fingers, a similar 20/50 +2 visual acuity in the left eye without glasses and with best correction, and the same reading visual acuity findings as the 2016 exam. (ECF No. 8 at 2027, PageID #: 2054, Ex. 26F at 2-3).

### C. Relevant Opinion Evidence

#### 1. Jeffrey Unterbrink O.D. - August 2016

Following Stratton's August 17, 2016 appointment, Dr. Unterbrink opined that Stratton "is visually impaired due to diabetic retinopathy and the treatment of diabetic retinopathy. It would be difficult for her to complete most work related duties." (ECF No. 8 at 1706, PageID #: 1733, Ex. 19F at 2). Dr. Unterbrink did not include further information or detail.

ALJ Frost-Wolf gave no weight to this opinion. (ECF No. 8 at 2673, PageID #: 2700).

#### 2. Lawrence Shaffzin, M.D. - August 2024

Dr. Shaffzin testified in the August 2024 hearing before ALJ Frost-Wolf that the medical records from 2016 and 2017 show that Stratton had a limitation of near and far acuity in the right eye and would have to avoid concentrated exposure to hazards such as heights and dangerous

machinery. (ECF No. 8 at 2698, PageID #:2725, TR 8). He opined that she would have been able to manage normal workplace hazards and could handle medium to large objects. (*Id.*). He stated that she would be able to handle computers and average, but not small, newspaper print, as well as any task requiring only fair to good depth perception. (ECF No. 8 at 2699, PageID #:2726, TR 9).

The ALJ gave great weight to Dr. Shaffzin's opinion, because he identified specific limitations and was able to review the complete medical record, including Dr. Unterbrink's eye examinations. (ECF No. 8 at 2673, PageID #: 2700). Additionally, the ALJ reported that Shaffzin was well qualified, explained the sources for his opinions, and answered questions from the claimant's representative. (ECF No. 8 at 2671, PageID #: 2698). The ALJ further found that Shaffzin's testimony regarding Claimant's vision impairment and what she was able to do functionally was "consistent with the overall evidence," including findings from State agency medical consultants, visual acuity findings at exams, and the claimant's crafting hobby. (*Id.*).

### 3. State agency opinions

The ALJ gave some weight to the state agency opinions of Drs. Bolz, Congbalay and Prosperi because they were generally consistent with the overall evidence that supports Stratton's ability to perform a range of light exertional work, with some restrictions for vision. (ECF No. 8 at 2672, PageID #: 2699).

### i. William Bolz, M.D. – August 2016

William Bolz, M.D. opined that the medical findings that led to Stratton's determination of statutory blindness were no longer present. (ECF No. 8 at 164 - 169, PageID #: 191 - 196, Ex. 2A at 13 - 18). Dr. Bolz found Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit and/or stand, and/or walk about 6 hours in an 8-hour workday; has limited

near and far acuity in the right eye; limited depth perception with both eyes; limited field of vision on the right; and could not perform jobs that require working around dangerous machinery or at hazardous heights due to visual limitations. (*Id.*). He opined that Stratton was able to navigate the hazards of the ordinary workplace. (*Id.*). The ALJ gave some weight to these findings because they were generally consistent with the overall evidence that supported Stratton's ability to perform a range of light exertional work with restrictions for vision. (ECF No. 8 at 2672, PageID #: 2699).

### ii. Maria Congbalay, M.D. - December 2016

Maria Congbalay, M.D., opined that the findings that led to the initial determination of statutory blindness were no longer present. (ECF No. 8 at 2000, PageID #:2027, Ex. 24F at 4). Dr. Congbalay reported that Stratton needed to avoid environmental hazards but was able to navigate the hazards of the ordinary workplace. (*Id.*).

### iii. Anne Prosperi, D.O. – September 2017

Anne Prosperi, D.O. reported that Claimant would have some visual limitations, but that the results do not support meeting or equaling the vision listings. (ECF No. 8 at 2033, PageID #:2060, Ex. 27F at 1). She opined that the results of Claimant's visual acuity examinations administered by Dr. Unterbrink do not support Dr. Unterbrink's conclusion that Stratton would not be able to complete most work-related duties. (*Id.*).

## IV. The ALJ's Decision

The ALJ reasoned that although Claimant's medical history could produce some of the reported symptoms regarding disability, Claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the objective medical and other evidence. She found that Stratton's allegations affect her ability to work only to

the extent they can reasonably be accepted as consistent with the medical evidence. (ECF No. 8 at 2668, PageID #: 2695).

The ALJ made the following findings relevant to this appeal:

4. The medical evidence establishes that, since August 1, 2016, the claimant has had the following medically determinable impairments: 1) obesity; 2) a mental impairment diagnosed to include anxiety disorder; affective disorder; and personality disorder; 3) end stage renal disease, status-post kidney transplant 2013); 4) chronic kidney disease, stage II; 5) bilateral diabetic retinopathy with macular edema; 6) polyneuropathy; 7) lumbar degenerative disc disease, status-post laminectomy (December 9, 2019); 8) idiopathic lumbar scoliosis; 9) metabolic syndrome; 10) cerebrovascular accident in May 2023; 11) coronary artery disease; 12) hypertension; 13) hyperlipidemia; and 14) umbilical hernia. These are the claimant's current impairments.

5. Since August 1, 2016, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on August 1, 2016 (20 CFR 404.1594(b)(1)).

7. The medical improvement is related to the ability to work because, by August 1, 2016, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)).

8. Since August 1, 2016, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

9. "Based on the impairments since August 1, 2016, the claimant has had the residual functional capacity to perform light exertional level work as defined in 20 CFR 404.1567(b) but could not perform climbing; could occasionally stoop or crouch but could not kneel or crawl; could not work around heavy machinery with fast moving parts or at unprotected heights; could not perform balancing on slippery, narrow, or uneven surfaces; could not work in environments with extreme heat; could not have public contact; could have occasional coworker and supervisory contact other than periods of instruction (periods of instruction are defined as the initial training and explanation or instruction on changes to tasks or routines); can perform tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota; could maintain attention, concentration, and pace for simple tasks in two hour periods; could make simple work related decisions; can tolerate occasional changes to job routine consistent with simple tasks; can perform tasks working with objects that are one inch or larger; can perform jobs that do not require binocular vision or precision tasks such as threading a needle; could not work in environments with concentrated exposure to fumes, odors, dusts, gases, or other respiratory irritants; and would require print that is at a 12 point font or larger."

8

14. Since August 1, 2016, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments since August 1, 2016, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

15. The claimant's disability ended on August 1, 2016, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(8)).

Based on her findings, the ALJ determined that Stratton has not been disabled as defined by the Social Security Act since August 1, 2016. (ECF No. 8 at 2675, PageID #:2702). Stratton assigns error to the ALJ for giving Dr. Unterbrink's opinion no weight in her decision and asserts that the ALJ had a duty to recontact Dr. Unterbrink to clarify vagueness in his opinion instead of giving it no weight whatsoever.

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

9

(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Termination of Disability Benefits

For termination of disability benefits, substantial evidence must demonstrate either medical improvement related to the ability to work or the ability to engage in substantial gainful activity, among other criteria. 42 U.S.C. § 423(f). The Social Security regulations outline a nine-step process that the ALJ will use in a continuing disability review: (1) whether claimant is engaged in substantial gainful activity; (2) whether claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; (3) whether there has been medical improvement as defined in 20 CFR 404.1594(b)(1); (4) if there has been medical improvement, whether it is related to claimant's ability to do work; (5) if there has been no medical improvement, or if at step four the medical improvement is not related to claimant's ability to work, whether any of the exceptions in 20 CFR 404.1594(d-e) apply (i.e., substantial evidence shows the prior finding of disability was made in error; or, there has been no medical improvement, but claimant is engaged in substantial gainful activity, the recipient of medical advances and treatments, or undergone vocational therapy, etc.); (6) if medical improvement is shown to be related to claimant's ability to do work, whether all claimant's current impairments in combination are severe (*see* § 404.1521); (7) if claimant's impairment(s) is severe, the ALJ will assess claimant's residual functional capacity ("RFC") based on all claimant's current impairments and consider whether claimant can still do work claimant has done in the past; (8) whether claimant can do other work given the RFC assessment and claimant's age, education, and past work experience. If claimant is able to do so, the ALJ will find

10

that the disability has ended; (9) If the ALJ finds that claimant can adjust to other work based solely on age, education, and RFC, the ALJ will not make a finding about whether claimant can do past relevant work, and will find that claimant is no longer disabled. If the ALJ finds that claimant may be unable to adjust to other work, the ALJ will assess the claim under step seven of this section and make a finding about whether claimant can perform past relevant work. 20 CFR 404.1594(f)(1-9).

The ALJ first determined that Stratton had not engaged in substantial gainful activity. (ECF No. 8 at 2661, PageID #: 2688). The ALJ determined at the second step that since August of 2016, Stratton no longer had an impairment or combination of impairments that met 20 C.F.R. § 404, Subpart P, Appendix 1, and consequently, the disability was not found to continue. (ECF No. 8 at 2662, PageID #: 2689). At steps three and four, the ALJ determined that medical improvement had occurred due to the change in the results of Stratton's eye examinations and that this improvement was related to the ability to perform work. (ECF No. 8 at 2666, PageID #: 2693). The ALJ determined at the sixth step that Stratton continues to have a severe impairment or combination of impairments. (*Id.*). At steps seven and eight, the ALJ identified Claimant's RFC to perform light exertional work as defined in 20 CFR 404.1567(b) and found that Stratton had no past relevant work experience but could perform a significant number of jobs in the national economy. (ECF No. 8 at 2674, PageID #:2701).

**C.  Discussion**

Stratton presents a single issue for review: whether the ALJ's rationale for discounting Dr. Unterbrink's opinion was supported by substantial evidence. She challenges the ALJ's analysis on two grounds. First, she contends that the ALJ failed to fulfill the duty to develop the record by not seeking clarification from Dr. Unterbrink before assigning his opinion no weight. Second, she

11

argues that the ALJ improperly relied on evidence post-dating her date last insured, 2016.

### 1. Standard for Evaluating Medical Opinion

Stratton applied for benefits in 2012. Thus, the rules for weighing medical opinions set forth in 20 C.F.R. § 404.1527(c) apply to her claim. The Regulations of the Social Security Administration provide that "we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you" (a "nonexamining source"). 20 C.F.R. § 404.1527(c)(1). An opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id*. § 404.1502, 404.1527(c)(2).[1] Claimant argues that the ALJ failed to properly weigh Unterbrink's opinion because she had a duty to recontact him for clarification before assigning his opinion no weight. Claimant alleges that because the ALJ did not give weight to the opinion, her decision was not supported by substantial evidence. The Commissioner argues that substantial evidence supports the ALJ's finding of nondisability as well as her decision to give "no weight" to Dr. Unterbrink's opinion.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Generally, a decision regarding disability is supported by substantial evidence when an ALJ "consider[s] all the evidence, including medical history; medical signs and laboratory findings; the claimant's statements; and treating and other medical source opinions." *Frock v. Astrue*, 2011 U.S. Dist. Lexis 17009, at *27 (S.D. Ohio 2011) (quoting 20 C.F.R. § 404.1529(c)(1)). Medical expert

---

[1] Because Plaintiff's application for disability benefits preceded the change of the Regulations that occurred in March of 2017, the prior Regulations apply.

opinions may act as sources which "provide substantial evidence supporting the ALJ's findings." *Id.* at *27 (quoting 20 C.F.R. § 404.1527(f)(2)). "An ALJ must 'consider and address medical source opinions' in the RFC, and if the RFC conflicts with a medical-source opinion, the ALJ must explain why." *Wilds v. Comm'r of Soc. Sec.*, 2025 WL 1001806, at *8 (6th Cir. 2025).

Although evaluating opinions are not given the same deference as treating source opinions, the ALJ must still evaluate the nature of the relationship and validity of the opinion itself and provide an explanation of their reasoning. "The ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(c)(2). After balancing these factors to determine what weight to assign treating and evaluating source opinions, "the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

### 2. Vagueness and Duty to Develop the Record

13

Stratton first argues that the ALJ's decision to assign "no weight" to Dr. Unterbrink's opinion lacks substantial evidence because the ALJ had a duty to develop the record. The ALJ explained that she assigned Dr. Unterbrink's opinion no weight because it "lacks details on what the claimant is able to do." (ECF No. 8 at 2673, PageID #: 2700). Claimant alleges that because Dr. Unterbrink's opinion was potentially "critical," the ALJ had a duty to obtain evidence to clarify any ambiguity in the opinion and recontact Dr. Unterbrink under *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). (*Id.*). The Commissioner argues that *Deskin* is misplaced in this case, because there was not a critical body of objective medical evidence that had not been accounted for by an expert opinion. (ECF No. 12 at 10, PageID #:4584). The Commissioner further argues that because Dr. Shaffzin examined the entire medical record, including Dr. Unterbrink's examination, the argument that the opinion was unaccounted for is particularly inapposite. (*Id.*)

This Court agrees with the Commissioner. As an initial matter, *Deskin* is not applicable here. The central question of *Deskin v. Comm'r of Soc. Sec.* was whether "an ALJ should decide a case in the absence of a medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity." *Deskin,* 605 F. Supp. 2d at 910-11. *Deskin* "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. Lexis 122296, at *4 (N.D. Ohio 2011). "The claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments. Under the regulations, the ALJ does have responsibility to develop the administrative record." *Deskin,* 605 F. Supp. 2d at 911. Generally, the claimant must present evidence that demonstrates disability, but in *Deskin*, the responsibility to develop the record arose when the ALJ interpreted two years' worth of raw medical data by

14

himself, instead of ordering a consultative examination or having a medical expert testify. *Id.* "In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Id.* "As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.* at 912. *Deskin* does not create a blanket obligation for an ALJ to recontact sources in the event of any kind of vagueness or ambiguity–the obligation arises only when vagueness results from a lack of expert opinions that account for a critical body of objective medical evidence.

Claimant argues that Dr. Unterbrink's examination and opinion were indicators of a potentially disabling impairment. (ECF No. 10 at 13, PageID #:4568). ALJ Frost-Wolf only had to develop the medical record insofar as necessary expert medical evidence was lacking. *Deskin* does not apply here because the ALJ did not make an RFC determination without a proper medical source opinion. Instead, the ALJ made her determination based on testimony from medical experts, specifically, Drs. Shaffzin, Bolz, Congbalay and Prosperi. Furthermore, *Deskin* does not limit ALJs to resolving such ambiguity only by recontacting treating sources. Although Claimant insists that the ALJ had an obligation to recontact Dr. Unterbrink, recontacting a treating source is just one possible remedy (and it bears reminding that Dr. Unterbrink was not technically a treating source anyway). Even if *Deskin* applied, the ALJ's evidentiary hearings with testimony from Dr. Shaffzin would satisfy the obligation to develop the record, because Dr. Shaffzin reviewed Dr. Unterbrink's examination and found that it showed medical improvement. *See Boughner v. Comm'r of Soc. Sec.*, 2017 U.S. Dist. Lexis 89060, at *24 (N.D. Ohio 2017) (An ALJ may also

15

resolve the *Deskin* issue by having a medical expert testify at the hearing). *Deskin* arguably placed an obligation on ALJs to develop the record and obtain expert medical opinions on raw medical data because ALJs are not experts capable of interpreting raw data. However, the "critical" evidence that Claimant refers to in Dr. Unterbrink's report was just his opinion of the examination results. Dr. Unterbrink performed an examination and delivered a conclusion regarding Claimant's disability. The ALJ did not disregard this examination—in fact, it was vital to the finding that Stratton was not disabled. The ALJ merely found the other opinions derived from this examination to be more persuasive. The ALJ referred to Dr. Shaffzin's and Dr. Prosperi's interpretations and opinions of the data resulting from Dr. Unterbrink's examination, which found that the vision results show medical improvement and a residual functional capacity. The 2016 eye examination by Dr. Unterbrink showed improvement in Stratton's vision, with her left eye measured at 20/40 - 2, compared to a prior recording of 20/200 at the time of the disability finding in 2012. Dr. Shaffzin relied on the examination to opine that Stratton would be able to "handle medium to large objects" and would not have "limitations working with a computer or reading." These elements of Dr. Shaffzin's opinion were essential to the RFC determination, and it would not have been available but for Unterbrink's examination. There was no ambiguity that the ALJ would need to clarify. *Deskin* was inapplicable to this case, because the ALJ never interpreted raw medical data; she deferred to the opinions of several qualified medical experts, especially the testimony of Dr. Shaffzin. Ultimately, Dr. Unterbrink's examination was not ignored or overlooked; it was the main source of medical evidence that supports the finding of medical improvement.

Disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it. *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). While ALJs must explain their reasoning when

assigning less weight to an expert opinion, the Sixth Circuit has "never interpreted the regulations to require a lengthy explanation from the administrative law judge. *Salisbury v. Comm'r of Soc. Sec.*, 2025 U.S. App. Lexis 8692, at *9 (6th Cir 2025). An ALJ might deem a medical opinion to be vague if it lacks specificity regarding a claimant's capabilities and impairments. A medical opinion is vague if it "does not specify any quantifiable or other particular physical or mental limitations associated with [the claimant's] impairments." *Ritter v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 14757, at *14 (S.D. Ohio 2013). This Court has previously held that "the vagueness of a medical opinion is a proper basis on which to afford it less weight." *Hays v. Comm'r of Soc. Sec.,* 2021 WL 5863976, at *8 (N.D. Ohio 2021).[2] *See also Clark v. Comm'r of Soc. Sec.*, 2019 WL 3574647, at *6 (N.D. Ohio 2019) (holding an ALJ did not err in assigning little weight to an opinion that was found to be "vague and unspecific."). A statement of disability that provides no detail regarding a claimant's functional limitations is merely a conclusory opinion, which the ALJ is not required to accept. *Ritter* at *13. "Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion that his patient is disabled is not giv[en] any special significance." *Id.* (quoting 20 C.F.R. §§ 404.1527(e), 416.927(e)). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.")

In *Berry v. Comm'r of Soc. Sec.*, 289 Fed. Appx. 54 (6th Cir. 2008), the Sixth Circuit affirmed the denial of disability benefits, holding that the ALJ's decision was supported by

---

[2] This 2021 case applies the post-2017 standard which does not require ALJs to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. However, this rule surrounding ALJ treatment of vague opinions is applicable because it is not inherently tied to either standard and is an objective judgment that is independent of the treating or nontreating source issue.

substantial evidence. *Id.* at 57. At issue was the ALJ's treatment of medical opinion evidence, particularly the opinion of Dr. Mathew, one of the claimant's treating physicians. *Id.* The ALJ properly assigned little weight to Dr. Mathew's opinion that the claimant was "totally disabled," because this conclusory opinion "[did] not provide the basis for the statement." *Id.* At the time of writing the opinion, Dr. Mathew had treated the claimant for less than a month, and he offered no details to support that the claimant was disabled. *Id.* The court acknowledged that normally a treating physician would merit great weight, but "that is only appropriate if the treating physician supplies sufficient medical data to substantiate the diagnosis." *Id.* at 56 (quoting *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981)). The court affirmed that the ALJ had correctly assigned less weight to Dr. Mathew's opinion because it was "vague, unsupported, and inconsistent with the record as a whole." *Berry* at 57. "Under these circumstances, it was appropriate to give less weight to his opinion and greater weight to the opinions of doctors who had the opportunity to evaluate Berry's disability based on the entire record." *Id.* The court affirmed that a conclusory opinion lacking a rationale or objective support merits less weight, and that vague statements of disability are not entitled to controlling weight.

Dr. Unterbrink's opinion was not only inconsistent with the opinions of Drs. Shaffzin, Bolz, Prosperi, and Congbalay, it also contained no specifications regarding Stratton's residual functional capacity. Dr. Unterbrink's conclusory statement that Stratton was disabled provided no insight into her actual functional limitations, which were necessary for the ALJ to make a disability determination, and the opinion was therefore too vague to be applicable. The ALJ cited this lack of specificity in her reasoning to assign the opinion no weight and was correct in doing so. Like Dr. Mathew, Dr. Unterbrink merely writes that Claimant is disabled, without providing a basis for the statement. Dr. Unterbrink did not supply "sufficient medical data to substantiate the diagnosis,"

18

and in fact, the details from his examination substantiated Dr. Shaffzin's finding of nondisability. Also, like Dr. Mathew's conclusory opinion, it was not Dr. Unterbrink's place to make a determination of disability. The determination was the responsibility of the ALJ, and she was not obligated to acquiesce to Dr. Unterbrink's vague conclusion. Although Claimant argues that the ALJ could not assign no weight to Dr. Unterbrink's opinion on the basis of vagueness, substantial evidence supports the ALJ's decision.

### 3.  Timeframe of Evidence

Next, Stratton argues that the ALJ's decision to give no weight to Dr. Unterbrink's opinion is not supported by substantial evidence because the ALJ considered evidence post-dating the discontinuation of Stratton's benefits. Specifically, Stratton argues that the ALJ erred by considering evidence from 2023 showing that she crafted for a hobby. Stratton argues that the ALJ should not have considered evidence from after her date last insured. The Commissioner argues that "while the date last insured was important to Plaintiff's initial Title II disability claim… the date last insured does not factor into a continuing disability review." (ECF No. 12 at 11, PageID #: 4585). The Commissioner argues that it would undermine the purpose of a continuing disability review to prevent the ALJ from examining contemporary data, because the objective was to determine whether the claimant experienced medical improvement and was no longer disabled. The Court agrees with the Commissioner that the date last insured is not relevant to this type of claim, and that the ALJ properly examined the period from the comparison point decision through the date of the ALJ's decision.

"Title II of the Social Security Act provides disability benefits for a claimant who demonstrates that he suffers a physical or mental disability within the meaning of the Act and that the disability arose prior to the expiration of his insured status." *Califano v. Sanders*, 430 U.S. 99,

19

101 (1977). *See* 20 C.F.R. § 404.101. However, the date last insured is not a factor in the context of continuing disabilities reviews. *See* 42 USCS § 423 (Benefits cease when an ALJ determines that a claimant's impairment "is not as disabling as it was considered to be at the time of *the most recent prior decision* that he or she was under a disability."). An ALJ examines whether medical improvement has occurred *after* the most recent favorable decision. 20 C.F.R. § 404.1594(c)(1). Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.* "Under Sixth Circuit law, the date of the most recent ALJ hearing, not the cessation of benefits date, is the relevant point of comparison for determining medical improvement subsequent to the initial award." *Sharon P. v. Comm'r of Soc. Sec.*, 2024 WL 3579114 1, 2 (S.D. Ohio 2024) (quoting *Difford v. Sec'y of Health & Hum. Servs.*, 910 F.2d 1316, 1320 (6th Cir. 1990)). "The ALJ must consider the plaintiff's condition at the time of the ALJ hearing and if the evidence shows she was disabled as of that date, her benefits should continue even if she was not disabled as of the cessation date." *Id.* The ALJ wrote that "the issue is whether the claimant's disability has ended under section 223(f) of the Social Security Act. After reviewing all of the evidence of record, I find that the claimant's disability ended on August 1, 2016, and the claimant has not become disabled again since that date." (ECF No. 8 at 2660, PageID #:56). Thus, the ALJ's decision contains two judgments: (i) the ALJ affirms that Stratton was not disabled as of August 1, 2016; and (ii) between the cessation of benefits in 2016 and the hearing, Stratton did not become disabled again. *Id.*

Claimant argues that the ALJ could not use evidence of Stratton's crafting hobby from 2023 to evaluate whether she was disabled in 2016, her date last insured. (ECF No. 10 at 15, PageID #: 4570); (ECF No. 13 at 3, PageID #: 4589). However, the ALJ was not merely evaluating

Stratton's disability in 2016; to properly conduct a CDR, the ALJ had to evaluate Stratton's condition at the time of the hearing, in order to determine whether medical improvement had occurred. The Court agrees with the Commissioner that the date last insured would have been relevant to Stratton's initial Title II claim for disabilities benefits but was irrelevant to a continuing disabilities review. (ECF No. 12 at 11, PageID #:4585).

Claimant cites *Saylor v. Saul*, 2021 WL 1062544, at *5 (E.D. KY 2021) and *Strong v. Soc. Sec. Admin.* 88 F. App'x 841, 845 (6th Cir. 2004) in support of her argument that "just as evidence of disability outside the relevant period is of little probative value, it stands to reason that so too would evidence of nondisability." (ECF No. 10 at 15, PageID #:4570). However, neither *Saylor* nor *Strong* involve a continuing disabilities review and instead involve the denial of a Title II claim for benefits, and thus the relevant period in both *Saylor* and *Strong* was defined by the date last insured. The cases were inapplicable to Stratton's suit, as they did not apply the correct standard of review. The ALJ was not limited to evidence from 2016 or earlier in determining whether Stratton was disabled at the time of the hearing. Since Stratton sought continuing benefits, an ongoing review of her medical evidence was necessary.[3]

### 4. Substantial Evidence Supports the ALJ's Decision to Give Dr. Unterbrink's Opinion No Weight.

Overall, the ALJ's decision to give Dr. Unterbrink's opinion no weight is supported by substantial evidence. An ALJ's decision has the support of substantial evidence when she "consider[s] all the evidence," including "treating and other medical source opinions." *Frock v. Astrue*, 2011 U.S. Dist. Lexis 17009, at *27. "It is true in the Sixth Circuit that the opinion of a

---

[3] Despite assigning error to the consideration of evidence from 2023, Claimant seems to understand that contemporary evidence is relevant to the ALJ's decision and offers testimony regarding her stroke in May of 2024, as well as medical records from 2018, 2020, and 2021.

state agency physician or psychologist and a medical expert who has reviewed the entire record and observed a claimant at the hearing can provide substantial evidence in the face of contrary testimony from a treating[4] acceptable medical source." *Avey v. Astrue*, 2011 U.S. Dist. Lexis 151475 at *22 (E.D. TN 2011) (citing *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640 (6th Cir. 2006) and *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994)).

Dr. Unterbrink's opinion that Stratton could not perform most work-related duties conflicted with the RFC that Stratton was still able to perform light exertional level work. In deciding that Stratton did not qualify as disabled, the ALJ investigated the entire record as a whole. The ALJ reviewed and discussed the entirety of Claimant's available medical records, spanning nearly 10 years. The ALJ explained that her decision was "supported by the overall evidence of record, the findings of the State agency consultants, many of the findings of the psychological consultative examiner, the objective findings of the optometry consultative examiners, and the claimant's ability to perform various activities. Despite the claimant's significant medical history, since August 1, 2016, the medical record reports a renal transplant without complications, improvement in vision, and many unremarkable physical and mental objective exam findings." (ECF No. 8 at 2673, PageID #:2700). This exhaustive review of the record, along with multiple expert opinions of nondisability from Drs. Shaffzin, Bolz, Congbalay and Prosperi, indicates that substantial evidence supported the ALJ's finding of nondisability, and supported her decision to assign no weight to the conflicting opinion of Dr. Unterbrink. The fact that the ALJ not only considered opinions from three state agency medical consultants but held a supplemental hearing

---

[4] Because Dr. Unterbrink is a nontreating, evaluating source, the deference owed to his opinion was even lower. The fact that this threshold is satisfied signifies that the ALJ made no error by going above the standard owed and satisfying even the requirements owed to a treating source.

to gain additional expert testimony from Dr. Shaffzin, a qualified consulting ophthalmologist, indicates that the ALJ based her decision on in-depth review that cumulatively qualifies as substantial evidence.

The ALJ explained that she assigned great weight to the opinion of Dr. Shaffzin, because he reviewed the entire record and incorporated it into his opinion, which fostered a more in depth understanding of Stratton's disability status. (ECF No. 8 at 2671, PageID #: 2698). Unlike Dr. Shaffzin, Dr. Unterbrink had not reviewed Stratton's entire medical history and based his opinion on a single encounter. Further, the ALJ explained that the opinion "is not consistent with the overall evidence that does not document this level of limitations related to vision." The conclusions Dr. Unterbrink drew from the raw data from the examination conflicted with the testimony and opinions of the other experts, including Drs. Bolz, Congbalay and Prosperi, who explained with detail Stratton's residual functional capacity to perform work-related tasks. There is no indication that the ALJ ignored Stratton's medical record. The ALJ's decision to give no weight to Dr. Unterbrink's opinion was supported by substantial evidence, comprised of the majority of the medical expert opinions and Stratton's extensive treatment history, which rendered the opinion inconsistent with the overall record.

The ALJ's decision was "supported by the overall evidence of record, the findings of the State agency consultants, many of the findings of the psychological consultative examiner, the objective findings of the optometry consultative examiners, and the claimant's ability to perform various activities," which she explained in her decision. (ECF No. 8 at 2673, PageID #: 2700). In addition to an extensive review of Stratton's medical history, the ALJ gave great weight to the opinions of Drs. Shaffzin, Bolz, Congbalay and Prosperi, all of whom had reviewed Stratton's

medical history, unlike Dr. Unterbrink. Claimant has not argued that the ALJ erred in her assignment of weight to the opinions of Dr. Shaffzin, Bolz, Congbalay and Prosperi.

Dr. Shaffzin supported his opinion through a detailed description of Stratton's physical limitations and capabilities and determined that she would be able to navigate the hazards of the ordinary workplace. Dr. Congbalay bolstered this determination through her same opinion that Stratton would be able to navigate the hazards of the ordinary workplace. Dr. Prosperi directly challenged Dr. Unterbrink's opinion and stated that the results of his examination did not support his conclusion of disability. These opinions provided substantial evidence to support the ALJ's RFC determination, and undermined Dr. Unterbrink's conclusion. Moreover, their opinions were stated in the correct manner; they did not merely provide conclusory statements as Dr. Unterbrink did. *See Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 855 (6th Cir. 1986) (internal citation omitted) ("[T]he ultimate determination of disability rests with the Secretary, not with the treating physician. Accordingly, the Secretary is not bound by a treating physician's conclusory statement."). A conclusion regarding disability was the responsibility of the ALJ, not Dr. Unterbrink. Medical expert opinions were necessary to support, and not to replace, the ALJ's determination.

These sources further demonstrate that the ALJ did not use the crafting hobby as the only source of evidence in her finding that Stratton is no longer disabled. The ALJ referenced the hobby to illustrate the inconsistency of Dr. Unterbrink's opinion with the full record. However, the ALJ supported her decision primarily with expert testimony and medical evidence. Thus, the ALJ's decision was properly based on legitimate medical expert opinions and the record as a whole.

## VI. Conclusion

24

For the foregoing reasons, the ALJ's decision to assign no weight to Dr. Unterbrink's opinion was supported by substantial evidence and consistent with applicable legal standards. The ALJ thoroughly evaluated Stratton's extensive medical history and weighed the medical opinions in accordance with 20 C.F.R. § 404.1527(c), reasonably finding that Dr. Unterbrink's opinion was inconsistent with the broader record and insufficiently supported by clinical findings. The ALJ also acted within her discretion in declining to recontact Dr. Unterbrink, particularly where the record already included testimony from multiple qualified experts who addressed the relevant medical evidence–including Dr. Unterbrink's own examination. Because the opinion was vague, conclusory, and lacking detail regarding specific functional capabilities, the ALJ was not required to give it significant weight. Further, the ALJ properly considered evidence beyond Stratton's date last insured in accordance with the standards governing continuing disabilities reviews. Accordingly, the Court finds that the ALJ applied the correct legal framework and that the decision was supported by substantial evidence.

## VII. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

DATE: July 21, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).